**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------------**X**

KATHLEEN CRAPANZANO, individually and
on behalf of all others similarly situated,

             Plaintiff

       -against-

NATIONS RECOVERY CENTER, INC.

           Defendant

-------------------------------------------------------------------------------**X**

11-cv-1008(FB)(LB)


### DEFENDANT'S MEMORANDUM IN
### OPPOSITION TO PLAINTIFF'S
### MOTION FOR ATTORNEY'S FEES


HILARY KORMAN, ESQ.
MEL S. HARRIS & ASSOCIATES, LLC
5 Hanover Square – 8th Floor
New York, New York 10004
212-660-4900 Ext.3309

i

## TABLE OF CONTENTS

**SECTION**                                                                    **PAGE**

**Introduction**…………………………………………………………………   1

**Pertinent Facts** ………………………………………………………………   1

**Point I**:   **PLAINTIFF'S TIME RECORDS ARE EXCESSIVE AND
              UNREASONABLE**…………………………………………..   3


**Point II**:  **PLAINTIFF'S COUNSEL IS NOT ENTITLED TO $300.00
              PER HOUR GIVEN PREVIOUS AWARDS GRANTED IN
              THIS DISTRICT AND IN LIGHT OF THE SPARSE
              PROCEDURAL HISTORY OF THIS CASE, AMONG
              OTHER THINGS** ……………………………………………   11

**Conclusion** ……………………………………………………………………   19

## TABLE OF AUTHORITIES

                                                                    **PAGE**

*Arbor Hill Citizens Neighborhood Association v. County of Albany,*
522 F.3d 182 (2d Cir. 2008) ……………………………………….…..    11, 12, 16, 17

*Ashkinazi v. Sapir*, 2005 WL 1123732 (S.D.N.Y.) ……………………….    14

*Aslam v. Malen & Associates*, 669 F.Supp.2d 275, 277
(E.D.N.Y. 2009) …………………………………………………….........    12, 13, 17

*Baruch v. Healthcare Receivable Mgmt., Inc.*, 2007 WL 3232090,
at *5 (E.D.N.Y. 2007) …………………………………………………..    13

*Bliven v. Hunt,* 579 F.3d 204, 213 (2d Cir. 2009) …………………………    3

*Cho v. Koam Med. Services P.C.,* 524 F. Supp. 2d 202, 209
(E.D.N.Y. 2007) …………………………………………………………..    18

*Cuevas v. Check Resolution Services, Inc.,* 09-CV-8823
(*Dockets # 15 and 16*, C.D. Cal. 2010) ……………………………………    15

*Estrella v. P.R. Painting Corp.*, 2009 WL 294378, at * 2
(E.D.N.Y. 2009) …………………………………………………………...    17

*Grant v. Martinez,* 973 F.2d 96, 99 (2d Cir. 1992). ………………………    3

*Heng Chan v. Sung Yue Tung Corp.*, 03 Civ. 6048(GEL),
2007 WL 1373118 (S.D.N.Y.) …………………………………………......    14

*Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933 (1983) ……....…    3, 5

*Johnson v. C.O. Barnes,* No. 09-CV-7960 (*Docket # 41*, C.D. Cal. 2010) ….    15

*Kirsch v. Fleet Street LTD.,* 148 F.3d 149, 173 (2d Cir. 1998) …...…………    3

*Larsen v. JBC Legal Group, P.C.*, 588 F. Supp. 2d 360, 364
(E.D.N.Y. 2008) ……………………………………………….…………...    13, 18

*Luciano v. Olsten Corp.,* 109 F.3d 111 (2d Cir.1997) …………….....…......    12, 15

*Marek v. Chesny,* 473 U.S. 1, 5 (1985)) ……………………………………    3

*Pinkham v. Prof'l Claims Bureau,* Inc., 367 F. Supp. 2d 338,
340 (E.D.N.Y. 2005) ……………………………………….………………   13

*Pipiles v. Credit Bureau of Lockport, Inc.,* 866 F.2d 22, 28
(2d Cir. 1989) …………………………………………………………….....   11

*Rodriguez ex rel. Kelly v. McLoughlin, 84 F.Supp.* 2d 417, 423
(S.D.N.Y. 1999) ..………………………………………………………………   14, 17

*Skold v. American Int'l Group, Inc.,* No. 96 Civ.7137,
1999 WL 405539 (S.D.N.Y.) ………………………………………….…….   14

*Sparkman v. Zwicker & Associates, P.C.*, No. 04 CV 1143(NG)
(KAM), 2006 WL 463939 (E.D.N.Y. February 27, 2006) ………………..   13, 14

*Vagenos v. LDG Financial Services,* No. 09-CV-2672(BMC)
(*Docket* # 41, E.D.N.Y.) ………………………………………………………   15

*Van Echaute v. Law Office of Thomas Landis, Esq.* No. 6:09–CV–1071
(NAM/GHL), Slip Copy, 2011 WL 1302195 (N.D.N.Y.) ………………….   18

## **STATUTES**

15 U.S.C. 1692(k)…………………………………………………………………..   1, 4, 11, 17

Fed.R.Civ.P. 26  ………………………………………………………………...   7

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------------X

KATHLEEN CRAPANZANO, individually and
on behalf of all others similarly situated,

**MEMORANDUM IN**
**OPPOSITION TO PLAINTIFF'S**
**MOTION FOR ATTORNEY'S FEES**

        Plaintiff

11-cv-1008(FB)(LB)

  -against-

NATIONS RECOVERY CENTER, INC.

        Defendant
-----------------------------------------------------------------------------X

## INTRODUCTION

Defendant Nations Recovery Center, Inc. respectfully submits this Memorandum of Law in opposition to plaintiff's motion for attorney's fees and costs pursuant to 15 U.S.C. 1692k(a)(3) and defendant's Rule 68 offer of judgment.

## BACKGROUND AND PERTINENT FACTS

From the outset, it should be noted that this case was effectively resolved prior to any court conferences or discovery. Despite this clear lack of procedural history, plaintiff's counsel is audaciously requesting $7,570.00 in attorney's fees and costs as compensation.

Following defendant's answer filing on April 19, 2011, and following plaintiff's highly inflated May 4, 2011 settlement offer of $12,500.00, Defendant and it's counsel strategically decided to offer an amount in excess of the maximum possible damages in this case by way of a Rule 68 offer of judgment, as it became clear that attorney's fees were dictating plaintiff's position. On May 9, 2011, defendant was notified of plaintiff's acceptance of the Rule 68 offer.

1

On May 10, 2011 plaintiff filed her acceptance of the $1,500.00 offer of judgment with the Court and abandoned the putative class claims (*Docket # 4*, attached hereto at **EXHIBIT A**).

However, settlement negotiations continued with plaintiff's counsel demanding a range of $9,500.00 to $3,500.00 for his fees and costs. Throughout, plaintiff's counsel refused to provide his billing records to support his requests because he wanted to file the motion so he could collect *additional* fees ("I do not like to forward my records until we have a reason to do so. Usually I am forced to make a motion anyway. If I am put in this position I would prefer not to share my internal records until it is necessary and *I can seek additional reimbursement for my preparation of the motion for fees and costs.*"-- Pursuant to Judge Bloom's Individual Rules, the cited May 11, 2011 e-mail is not being attached to this opposition but can be supplied to the Court if requested). Prior to plaintiff improperly filing the instant motion, defendant had offered plaintiff's counsel up to $1,500.00 for his fees or recommended that the parties appear for Judge Bloom's originally scheduled June 7, 2011 settlement conference (*see* Docket entry dated 5/11/2011) in hopes of working the fee issue out in lieu of more costly motion practice. Defendant thought it's offer was reasonable since it's counsel's fees had not even accrued to that amount.

As the Court knows, plaintiff thereafter filed the instant fee application, despite Judge Block's pre-motion conference rules, in an attempt to circumvent appearing for the June 7, 2011 settlement conference before Judge Bloom. Plaintiff simultaneously filed a request to adjourn the June 7, 2011 settlement conference *sine die* or to appear by phone. Once the motion was re-assigned to Judge Bloom and deemed filed, in another attempt to avoid unnecessary litigation and costs, defendant offered plaintiff $4,000.00 to resolve his fees and costs. Surprisingly, it too was rejected by defendant's counsel. Despite the innate function of the Rule 68 offer, to curb

2

excessive and unnecessary attorney's fees associated with protracted litigation (*see Marek v. Chesny,* 473 U.S. 1, 5 (1985)), plaintiff is asking the Court to ignore the function and purpose of the rule and instead provide him with a $7,570.00 windfall for filing a complaint (23.4 hours x $300.00 per hour + $550.00 in costs).

## ARGUMENT

## I.    PLAINTIFF'S TIME RECORDS ARE EXCESSIVE AND UNREASONABLE

Consistent with plaintiff's counsel's attempt to withhold his billing records during settlement negotiations in the hope of billing more through motion practice, plaintiff is again unreasonable and unrealistic in the time he claims to have spent working on this case. Considering there were no court conferences and no discovery, plaintiff's counsel's claim that he billed 23.4 hours is absurdly unreasonable and excessive, and certainly not in line with the result achieved.

A district court is entitled to deduct a reasonable percentage of the number of hours claimed "as a practical means of trimming fat from a fee application." *Kirsch v. Fleet Street LTD.,* 148 F.3d 149, 173 (2d Cir. 1998)(citations omitted). Further, the Court must consider whether "a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez,* 973 F.2d 96, 99 (2d Cir. 1992). Finally, "in determining what fee is reasonable, the court takes account of hours that it views as 'excessive, redundant or otherwise unnecessary.'" *Bliven v. Hunt,* 579 F.3d 204, 213 (2d Cir. 2009)(quoting *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933 (1983)).

As a practical matter, it is apparent that plaintiff's counsel's time log is inflated and unrealistic.    For example, plaintiff's counsel's first entry on 1/19/2011, "review docs & discussions with client/fdcpa overview," which allegedly took 1.5 hours, is both unfathomable

3

and vague. While it is possible that plaintiff's counsel spent twenty minutes or so gathering the factual background from his client, it's impossible that it took plaintiff's counsel 1.1 hours to sift through the case "docs," especially where no documents were attached to the complaint and only seven documents were provided with plaintiff's Rule 26 initial disclosures. We believe a reasonable amount of time for this task would be .8. Further, it is hardly believable that plaintiff's counsel spent an entire hour preparing and discussing the retainer agreement in this case (1/19/2011 entry) given that it is a run-of-the-mill FDCPA case and he likely uses an identical retainer agreement form each and every time he takes on an FDCPA client. If plaintiff's counsel did indeed draft some novel and complicated retainer agreement, it is suspect that said agreement was not attached to his motion to support his bold claim. However, that is likely not the case and plaintiff's counsel could not have spent more than thirty minutes on the task.

Regarding the entry entitled "updates from client/fact developments," as defendant had not taken any action related to contacting or communicating with plaintiff between her initial discussion with her attorney on January 19, 2011 and January 23, 2011, it is impossible that there were any kind of "fact developments" to report that would render a half an hour discussion necessary. This is also supported by the limited factual allegations contained in the complaint, which are only twelve paragraphs long (*see* Complaint ¶¶ 8-19). Also, as the complaint had not been filed in January, there were no updates on the case to report either. Thus, if the conversation took place at all, it could not have been longer than .1.

As far as plaintiff's counsel's claim that it took him 2.5 hours to draft the six page complaint "and docs" in this case, as the instant complaint bears a striking resemblance to a plethora of other FDCPA putative class action cases filed by plaintiff's counsel recently (*see*

4

**EXHIBIT B**), it is clear that plaintiff's counsel utilized a form complaint.  In addition, the class claims were never pursued by plaintiff and defendant cannot be held responsible for the time spent preparing those failed allegations, which accounts for roughly two out of the six pages of the complaint and which are identical to the class allegations utilized in the other complaints at **EXHIBIT B**.  *see Hensley v. Eckerhart*, 461 U.S. at 434, 103 S.Ct. 1933 (A prevailing party who is entitled to a fee award for his successful prosecution of successful claims is not entitled to a fee award for unsuccessful claims that were "based on different facts and different legal theories.").  And, as "docs" is too vague to identify or determine if the time spent was reasonable, it must be disregarded by the court.  Given the circumstances, a more appropriate amount of time spent for this task is .4.

Regarding the "R & R prep & upload telephonic recordings" entry on 2/24/2011, defendant contends that this entry must be credited a .3 rather than the .7 plaintiff's counsel claims.  First, the only recording supplied to defendant with plaintiff's Rule 26 initial disclosures was a one minute and fifty-two second file (*see* a photograph of the wav file indicating a time of 1:52 at **EXHIBIT C**).  Surely, the task of uploading a less than two minute recording should have taken less than a minute.  Also, as will be discussed below, uploading a "wav" file is a secretarial or paralegal task, and shouldn't be unfairly billed by an attorney.  Regarding the "R & R prep" aspect, although it is again a vague entry, defendant presumes plaintiff's counsel listened to the one minute, fifty two second recording, hence a .2 credit that it will concede.  Any other "R & R" that plaintiff's counsel may claim is unwarranted as defendant had not yet appeared to review any documents from it and plaintiff's counsel had already reviewed all other documents from plaintiff on 1/19/2011.

5

Further, plaintiff's counsel's 4/7/2011 entry "Disc HK (Hilary Korman, Esq.) in re extending time to answer/possible settle" for .4 is impossible. Not only was the exchange regarding the answer extension done by e-mail, for which defendant's counsel only billed ".1," no telephone discussion took place. In response to defendant's counsel's concise and straightforward request for a two week answer extension, and nothing more, the only response from plaintiff's counsel was one single word, "Sure." Additionally, there was *no discussion* of settlement on that date. Thus, it is impossible that plaintiff's counsel spent more than three minutes on this task.

Defendant further contends that the "Disc client re stress and emotional damages" entry for .6 on 4/8/2011 must be disregarded altogether. As the plaintiff had already discussed the case with her attorney when he accepted the case and executed the retainer agreement, and as the complaint requesting said actual damages had *already been filed* a month earlier, if the conversation occurred at all, it was duplicative, unnecessary, and unreasonable to hold defendant accountable for.

Interestingly, plaintiff's counsel claims that he spent *one hour* reviewing defendant's roughly four page answer (4/19/2011 R & R Answer), which took defendant's counsel, who has significantly less experience than plaintiff's counsel, less than that amount of time to *draft.* Clearly, the only explanation for the entry is that it is highly inflated and unreasonable. At most, this task took plaintiff's counsel .5. Similarly, defendant does not know what plaintiff's counsel means by "R & R notices" for .5 on 4/19/2011. No documents were forwarded to plaintiff's counsel by defendant on that date and there were no orders issued on that date by the Court. As the entry is impossibly vague and cannot be explained, the reasonableness cannot be assessed and the entry must be disregarded altogether.

6

Plaintiff's counsel's claim that he spent .5 on 4/20/2011 reviewing Judge Bloom's one paragraph ECF docket entry on 4/20/2011 regarding scheduling is patently unrealistic. There is no possible way that this task took him longer than three to four minutes to complete. Further, it was marked in defendant's billing as .1. Also patently unreasonable is plaintiff's counsel's claim that it took him one and a half hours to draft and prepare plaintiff's Rule 26 initial disclosures on 5/4/2011, which were only two pages long and contained seven pages of photocopied documents (*see* **EXHIBIT D**). First, plaintiff's counsel cannot expect to be compensated for paralegal tasks such as photocopying and scanning the relevant documents. Also, he cannot claim that he had to again review the documents since previous entries tell us that he already did. Third, since the actual drafted document is only two pages long, the drafting could not have taken plaintiff's counsel more than .2. Including the e-mailing of the documents to defendant's counsel, defendant will be liberal and concede that defendant *may have* billed up to .3 for this task.

The same goes for plaintiff's counsel's excessive two hours he claims to have spent on preparing the *two page* Rule 26 report on 5/4/2011. While plaintiff's counsel did create the first draft, defendant's counsel was forced to spend a significant amount of time cleaning up the document's formatting and contents. *See* defendant's mark ups at **EXHIBIT E.** Also, defendant's counsel, and not plaintiff's counsel, ended up filing the document (*Docket # 3*). And, despite the significant changes and filing, defendant's counsel only spent .6 on the task. There is no way to justify plaintiff's counsel audacious 2.0 request and he should not be credited more than .6 for it.

Regarding the 5/5/2011 entry for "Review MLD/Rule 26" for .5, defendant does not know what "Review MLD" means. Thus, it cannot be justified and must be disregarded. Also, it does not make sense that plaintiff's counsel would be reviewing Fed.R.Civ.P. 26 for thirty

minutes one day *after* he served plaintiff's Rule 26 initial disclosures.  Further, if the review was in response to defendant's Rule 26 disclosures, defendant was never made aware of any deficiencies regarding it's disclosures and the alleged research was unnecessary.  At most, plaintiff should not be afforded more than .1 for this task, especially in light of his claimed focus on these kinds of FDCPA cases.

Further, while plaintiff's counsel claims that he spent .5 on "Phones HK in re Rule 16/26 discussions" on 5/5/2011, defendant's counsel does not have a record of any telephone conversations with plaintiff's counsel on that date.  Rather, there is a record of a ".2" telephone discussion with plaintiff's counsel on *5/4/2011* in defendant's records and that is all plaintiff's counsel should be credited for.

Regarding the 5/5/2011 entry for "R & R Def Disclosures" for 1.5, as defendant's Rule 26 initial disclosures were only one and a half pages long and only contained a one page supplemental document (*see* **EXHIBIT F**), plaintiff's counsel's alleged time spent is excessive, especially in light of the fact that it only took defendant's counsel .2 to prepare.  In sum, plaintiff's counsel should be awarded .2 for this task.  Additionally, plaintiff's counsel's entry of .8 regarding a discussion with the plaintiff about the Rule 68 offer on 5/5/2011 is unreasonable. First, in light of the fact that defendant included the maximum FDCPA statutory damages of $1,000.00 (15 U.S.C. 1692(k)) allowable by law in addition to $500.00 to address plaintiff's claim of actual damages, despite the fact that defendant was never supplied with any sort of proof to support the claims, it is hardly realistic that it took plaintiff's counsel .8 to convince the plaintiff to accept what is arguably in excess of the maximum judgment plaintiff would receive following a successful trial.  Contrarily, .2 would be a reasonable amount of time to spend explaining this to plaintiff.

8

As a general proposition, considering that the Rule 68 offer was accepted on 5/9/2011 and included all costs and attorney's fees accrued to the date of acceptance[1] (*see also*, defendant's offer of judgment and subsequent acceptance at **EXHIBIT A**), all of plaintiff's counsel's billing entries following the May 9, 2011 acceptance must be disregarded. Further, as will be discussed in more detail below, considering that defendant had offered plaintiff's counsel $1,500.00 to resolve his fees and costs prior to the motion filing and where plaintiff's counsel refused to supply his billing and cost records, all billing associated with the instant fee application filing, admittedly done by plaintiff's counsel to further increase his compensation, must be rejected as unnecessary and excessive. In other words, based on plaintiff's counsel's reasonable hourly rate of $200.00 per hour, as described below, and the reasonable calculation of 6.0 billable hours, as described above, plaintiff's counsel was actually owed $1,200.00 in fees and $550.00 in costs and the settlement offer was fair and reasonable. Further, as defendant's counsel also offered plaintiff's counsel $4,000.00 after the motion was filed, to avoid further litigation costs associated with motion practice, and where he still refused to settle the issue, any further recovery for the instant motion and any further conferences or replies must be barred as well.

Even if that were not the case, the subsequent entries are also excessive. Beginning with the Rule 68 acceptance filed on 5/10/2011, as plaintiff's acceptance is based on a form (*see* **EXHIBIT G**, an almost identical copy of a Rule 68 acceptance filed by plaintiff's counsel in an unrelated case) and only one page long, it is impossible that plaintiff's counsel spent longer than

---

[1] The relevant part of Fed.R.Civ.P. 68(a) states: "At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, **with the costs then accrued**."

9

.2 on the task, despite the 1.5 hours he claims. Thus, his request would have to be significantly reduced.

Also, regarding the ".5" entry on 5/10/2011 for the motion to adjourn the initial conference (*Docket # 5*), as the letter motion is straightforward, one page long and roughly three paragraphs, plaintiff's billing is vastly inconsistent with the work product. In reality, the letter could not have taken plaintiff's counsel more than .2. Also, regarding his .4 entry following his motion to adjourn the 6/7/2011 settlement conference filed on June 3, 2011 (*Docket # 7*), given defendant's opposition, and given that the basis for plaintiff's counsel's request was that he did not believe that the conference was necessary and did not want to fly from California to New York to appear in person, despite the fact that he and plaintiff chose to file the action here, although the motion was ultimately granted, the conference was re-scheduled to another in-person date. In other words, defendant should not be held responsible for plaintiff's counsel's decision to spend his time on the West Coast, all the while claiming to have a New York office, especially where the conference was re-scheduled to another in-person date.

To put the billing hours into perspective, in a case involving even more litigation than the present one, and where an initial conference *had in fact* taken place, Judge Sweet found that a total of **three hours** was a reasonable amount of time to expend on the case and awarded plaintiff's counsel $375.00 in attorney's fees:

> He opened a file, prepared a simple, four-page complaint, and attended a pretrial conference, tasks reasonably accomplished in three hours for an attorney with "extensive experience in FDCPA litigation both in filing individual actions and class actions."

> *Shapiro v. Credit Protection Association I, Inc.*, 53 F.Supp.2d 626, 628 (S.D.N.Y. 1999).

Based on the foregoing, I respectfully ask the Court to reduce plaintiff's attorney's billable hours from 23.4 to at most 6.0 hours.

## II.     PLAINTIFF'S COUNSEL IS NOT ENTITLED TO $300.00 PER HOUR GIVEN PREVIOUS AWARDS GRANTED IN THIS DISTRICT AND IN LIGHT OF THE SPARSE PROCEDURAL HISTORY OF THIS CASE, AMONG OTHER THINGS

There is no dispute that plaintiff's counsel is entitled to an award for attorney fees. Once a violation of any provision of the FDCPA has been established, under 15 U.S.C. § 1692k(a)(3) an award of reasonable attorney fees and costs to the consumer is mandatory. See, *Pipiles v. Credit Bureau of Lockport, Inc.,* 866 F.2d 22, 28 (2d Cir. 1989)(citations omitted).  However, plaintiff's attorney fee application improperly bases his fee analysis on the antiquated definition of the "lodestar method", which has since been clarified and qualified by the Second Circuit in *Arbor Hill Citizens Neighborhood Association v. County of Albany,* 522 F.3d 182 (2d Cir. 2008) ("Arbor Hill").  According to the *Arbor Hill* court, in abandoning the traditional definition of "lodestar," "the meaning of the term 'lodestar' has shifted over time, and its value as a metaphor has deteriorated to the point of unhelpfulness." *Id* at 190.  Further, regarding the updated use and definition, the *Arbor Hill* court translated the term into the "presumptively reasonable fee" and opined:

> The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the Johnson factors[2]; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively. The district court should also consider that such an individual might be able to negotiate

---

[2] (1) The time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the result obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

11

> with his or her attorneys, using their desire to obtain the reputational
> benefits that might accrue from being associated with the case. The district
> court should then use that reasonable hourly rate to calculate what can
> properly be termed the presumptively reasonable fee.

*Id.* A reasonable fee "should be 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Luciano v. Olsten Corp.,* 109 F.3d 111 (2d Cir.1997). "It is well-established that the 'prevailing community' the district court should consider is 'the district in which the court sits.'" *Id.*

It is difficult to comprehend how an Eastern District consumer, undoubtedly already in financial troubles and debt, would be willing to pay the $300.00 per hour that plaintiff's counsel requests. Surely, as the Eastern District is a highly populated district with a number of competing FDCPA attorneys of even greater success and experience than Mr. Goldstein, it cannot be said that $300.00 per hour is the "minimum" hourly rate necessary to litigate the case effectively from a client's perspective under *Arbor Hill.* Further, although plaintiff's counsel claims to have demonstrated a "commitment to consumer advocacy" (Motion for Attorney's Fees Pg. 6)," for the first five years after his admission to the bar, he represented *creditors* on the other side (Goldstein Declaration ¶17-18). In fact, Mr. Goldstein has only been representing consumers for roughly six years since opening his firm in 2005 (Goldstein Declaration ¶19). Further, Mr. Goldstein does not claim to have ever certified a class, conducted a trial, or participated in any kind of not-for-profit work to warrant heightened and senior-level rates. Similarly, Mr. Goldstein conveniently omits mention of what his established billing rate is for paying clients.

In the case of *Aslam against Malen & Associates*, 669 F.Supp.2d 275, 277 (E.D.N.Y. 2009), an FDCPA case in front of Hon. Arthur D. Spatt, the Court found that "although

12

Bahamonde (plaintiff's attorney) devotes a significant part of his practice to consumer protection cases, he has only been practicing in this area since 2003 when he founded his own firm. (*citing Larsen v. JBC Legal Group, P.C.*, 588 F. Supp. 2d 360, 364 (E.D.N.Y. 2008) (finding that $300 per hour was the appropriate rate in an FDCPA case where the attorney had 17 years of experience including 7 years specializing in consumer protection law) and *Baruch v. Healthcare Receivable Mgmt., Inc.*, 2007 WL 3232090, at *5 (E.D.N.Y. 2007) (awarding counsel with 19 years of experience $350 per hour for work in a FDCPA case)). The court went on to say "[h]ere, the Court finds that a rate of $250 per hour represents what a lawyer of Bahamonde's experience could reasonably charge for FDCPA work in the Eastern District of New York." (*citing Pinkham v. Prof'l Claims Bureau*, Inc., 367 F. Supp. 2d 338, 340 (E.D.N.Y. 2005) (finding that $250 was a reasonable hourly rate for FDCPA work in the Eastern District of New York)." *Id.* In comparison to this case, the *Aslam* case went all the way to trial and plaintiff's attorney had far more litigation experience than Mr. Goldstein. And, unlike the above-cited cases where the attorney's were awarded rates of $350 or $300 per hour, the respective attorneys had seventeen and nineteen years of experience, compared to Mr. Goldstein's ten in general and six in consumer litigation.

Moreover, as stated in *Sparkman v. Zwicker & Associates, P.C.*, No. 04 CV 1143(NG)(KAM), 2006 WL 463939 (E.D.N.Y. February 27, 2006):

> In recent decisions, district courts in this circuit have awarded attorney's fees at rates ranging from $200 to $250 per hour for experienced attorneys in FDCPA cases. *See Savino v. Computer Credit Inc.*, 990 F. Supp. 159, 169 (E.D.N.Y. 1998), *aff'd in relevant part*, 164 F.3d 81, 87 (2d Cir. 1998) ($200 per hour); *Laster v. Cole*, 2000 WL 863463, *2 (E.D.N.Y. Jun. 23, 2000) ($200 per hour); *Kapoor v. Rosenthal*, 269 F. Supp. 2d 408, 415 (S.D.N.Y. 2003) ($225 per hour); *Pinkham v. Professional Claims Bureau, Inc.*, Supra ($250 per hour); *Dowling v.

13

*Kucker Kraus & Bruh, LLP*, 2005 WL 1337442, *8 (S.D.N.Y. Jun. 6, 2005) ($200 per hour).

Taking the relevant case law into consideration, following entry of *summary judgment* in favor of plaintiff, the *Sparkman* court concluded that $200 per hour was a reasonable rate for the legal work performed and awarded a total of $1,815 in fees and costs to plaintiff's counsel. It should be noted that, unlike the instant case, in light of dispositive motion practice, discovery, and several court conferences, the award in *Sparkman* is roughly four times less than that plaintiff is requesting in fees and costs in this case.

In support of his request for $300 an hour, plaintiff's counsel cites *Heng Chan v. Sung Yue Tung Corp.*, 03 Civ. 6048(GEL), 2007 WL 1373118 (S.D.N.Y.). However, *Heng*, unlike the instant FDCPA action, was a complex civil rights case assessing fees *after trial*, with eleven plaintiffs, under the Fair Labor Standards Act. There is no evidence linking Mr. Goldstein to any civil rights cases or any manner of complex litigation. Similarly, also in support of his request for $300 an hour, plaintiff's counsel cites *Skold v. American Int'l Group, Inc.*, No. 96 Civ.7137, 1999 WL 405539 (S.D.N.Y.). Once again, this case, like *Heng*, does not have anything to do with FDCPA litigation and instead involves an experienced civil rights attorney that successfully defeated American International Group, Inc. *after trial* regarding violations of Title VII and the New York State and City Human Rights Laws. The instant case before the Court *does not have any noticeable similarities* to *Skold*, supra. Likewise, plaintiff cites *Ashkinazi v. Sapir*, 2005 WL 1123732 (S.D.N.Y.), another completely unrelated case where plaintiff's counsel had *26 years* of litigation experience. Finally, in support of his request for $300 an hour, plaintiff cites *Rodriguez ex rel. Kelly v. McLoughlin, 84 F.Supp.* 2d 417, 423 (S.D.N.Y. 1999). This case, like the other above-mentioned irrelevant cases cited in support of plaintiff's counsel's request for $300 an hour, is dissimilar to the instant case as *Rodriguez* involves a complex civil rights case

14

alleging deprivation of rights under the Due Process Clause of the Fourteenth Amendment. In light of plaintiff's cited cases involving highly experienced attorneys in complex civil rights litigation receiving approximately $400 per hour, plaintiff's counsel's seemingly arbitrary request for $300 per hour, without any pointed authority or the requisite experience, does little to support his position. As such, it cannot be stated that a paying client would be willing to pay Mr. Goldstein $300 an hour for his services.

Moreover, Mr. Goldstein's reference to two attorney's fee awards in California for $275.00 and $325.00 cannot be considered in this case for several reasons. First, as described in *Luciano, supra,* an attorney's fee award is based on reasonable rates throughout the community *where the district court sits.* Clearly, comparing rates between the Central District of California and the Eastern District of New York is tantamount to comparing "apples" with "oranges." Secondly, in the case where Mr. Goldstein was awarded $325.00 per hour, *Cuevas v. Check Resolution Services, Inc.,* 09-CV-8823 (*Dockets # 15 and 16*, C.D. Cal. 2010), the default judgment and fee application decision were *unopposed.* Surely, if the defendant had answered and appeared, the outcome would have been vastly different. Second, regarding Mr. Goldstein's $275.00 *local California* rate in *Johnson v. C.O. Barnes,* No. 09-CV-7960 (*Docket # 41*, C.D. Cal. 2010), it should be noted that Mr. Goldstein was requesting fees totaling $41, 327.50, but the fees were dramatically reduced by Judge King to $14,025 due to hours not "reasonably expended" and where billing entries were "highly non-specific." Moreover, regarding the one Eastern District fee award case cited by Mr. Goldstein, *Vagenos v. LDG Financial Services,* No. 09-CV-2672(BMC)(*Docket # 41,* E.D.N.Y.) decided *less than a year ago,* on July 19, 2010, the $250.00 rate was granted following a variety of motions, discovery, and trial preparations. Given that the *Vagenos* decision was rendered less a year ago, it appears Mr. Goldstein expects

15

the court to accept the proposition that he should be entitled to a \$50.00 increase in his rate each and every time he files a fee application in this district.

Also, while plaintiff's counsel graciously proclaims that although he has not asked the Court to "award fees or costs relating to travel between Los Angeles and New York," he requests that his bi-coastal practice support his requested \$300.00 rate (Goldstein Declaration ¶ 25). Interestingly, to date, as there have been no court conferences held, and plaintiff's counsel has twice attempted to avoid appearing in the very court he chose to file the action in (*Dockets # 7 & 11*), plaintiff's counsel could not have incurred any travel expenses and cannot impute the fact that he ambitiously attempts to conduct his solo practice in two states on opposite coasts on defendant. Also, it is unclear how consumers benefit from Mr. Goldstein's bi-coastal practice in light of the abundance of FDCPA attorneys in both states.

In considering the other *Arbor Hill* factors, *supra*, as class allegations were abandoned, this was not a time or labor intensive case and there were no novel or difficult issues raised in the short-lived "litigation." Furthermore, as this was a typical FDCPA action, a high level of skill was not required to perform the legal services properly or effectively. Additionally, there is no evidence that plaintiff's counsel was precluded from accepting employment due to the acceptance of this case, just as there is no evidence that plaintiff's counsel has a customary hourly rate. In regards to whether the fee is fixed or contingent, plaintiff's counsel has not submitted a copy of the retainer agreement and does not state the terms of any such agreement. Furthermore, there does not appear to have been any time limitations imposed by the client or the circumstances, and this case does have any notable issues that would indicate it was undesirable to accept. As far as the nature and length of the professional relationship with the client, upon

information and belief, plaintiff contacted Mr. Goldstein through an online service, and their professional relationship consists solely of the time spent on this one case.

One of the factors discussed in *Arbor Hill*, *supra,* as part of the Johnson factors, is the amount involved in the case and the result obtained. Plaintiff brought this instant case as a putative class action and requested statutory damages and actual damages. The final result of this litigation is maximum statutory damages ($1,000.00) pursuant to 15 U.S.C. § 1692(k) plus $500.00 in actual damages, as offered by defendant in it's Rule 68 offer of judgment. Most importantly, the class allegations, which were the entire foundation of the case, were abandoned by plaintiff. As stated in *Rodriguez ex rel. Kelly*, 84 F.Supp.2d at 420, a case cited by plaintiff's attorney in his fee application memorandum:

> The Supreme Court has stated that 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.' *Farrar v. Hobby,* 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (quoting *Hensley,* 461 U.S. at 436, 103 S.Ct. 1933). Fees may be awarded for unsuccessful claims only when they are 'inextricably intertwined' or 'involve a common core of facts or [are] based on related legal theories.' *Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1183 (2d Cir.1996) (quoting *Hensley,* 461 U.S. at 435, 103 S.Ct. 1933); *see also Grant v. Bethlehem Steel Corp.,* 973 F.2d 96, 101 (2d Cir.1992). The Court must evaluate whether the degree of plaintiffs' success merits granting the fee application in its entirety, or whether a reduction is warranted based on the degree of success. *See United States Football League,* 887 F.2d at 415 (affirming reduction of award by 20% to reflect limited success); *Ragin v. Harry Macklowe Real Estate Co.,* 870 F.Supp. 510, 523 (S.D.N.Y.1994) (reducing award by 50%), *aff'd in part, rev'd in part on other grounds,* 6 F.3d 898 (2d Cir.1993).

Although plaintiff did receive maximum statutory damages as well as a meager amount of actual damages, following an early offer of judgment by defendant, in light of plaintiff and Mr. Goldstein's abandonment of the putative class claims, a reduction in the award related to the plaintiff's incomplete degree of success is warranted.

As expressed in *Aslam*, *supra,* the appropriate rate for paralegal work in the Eastern District of New York is $75 per hour, citing *Estrella v. P.R. Painting Corp.*, 2009 WL 294378, at

* 2 (E.D.N.Y. 2009) (quoting *Cho v. Koam Med. Services P.C.,* 524 F. Supp. 2d 202, 209 (E.D.N.Y. 2007))(observing that courts in the Eastern District of New York have awarded between $70 and $80 per hour for work by legal assistants); *Larsen*, Supra at 364 (finding that $75 per hour is the appropriate rate for paralegal work). There are several instances in Mr. Goldstein's billing records where the work could have been accomplished by a paralegal, such as the 2/24/2011 "upload telephonic recordings" entry, the 5/4/2011 "prepare" initial disclosures, which undoubtedly entailed photocopying and scanning, the "prepare" of the acceptance of the offer on 5/10/2011, and the like. Given that no work was billed by a paralegal, it is likely that there were other "paralegal tasks" undertaken by Mr. Goldstein that are not clearly reflected in his records. Thus, these issues must be taken into consideration and be assigned a discounted rate.

The Court should also consider a recent fee award in a similar case with a similarly limited procedural history, *Van Echaute v. Law Office of Thomas Landis, Esq.* No. 6:09–CV–1071 (NAM/GHL), Slip Copy, 2011 WL 1302195 (N.D.N.Y.). In *Van Echaute*, where a Rule 68 offer of judgment resolved the FDCPA case following the Rule 16 initial conference, in calculating the reasonable attorney's fees, the court stated "[t]his brings the total reasonable attorney's fee award in this case to $830.00 which the Court considers more than fair given the recovery, absence of discovery and state of litigation when the case was settled." *Id.* at *4. The court also reduced the requested hours to five hours total. *Id.*

For the reasons stated above, I am asking the Court to find that a rate of not more than $200 per hour represents what a lawyer of Mr. Goldstein's experience, abilities, success, and reputation could reasonably charge for FDCPA work in the Eastern District of New York.

18

## CONCLUSION

Plaintiff's complaint sought class certification, statutory damages, and actual damages. The class allegations were abandoned and plaintiff accepted defendant's Rule 68 offer of judgment before any court conferences were conducted or any discovery had taken place. Based on the authorities cited above, defendant urges the Court to reduce plaintiff's attorney's billable hours from 23.4 to no more than 6.0 hours, and for the Court to find that a rate of not more than $200 per hour represents what a lawyer of Mr. Goldstein's experience, abilities, and stature could reasonably charge for FDCPA work in the Eastern District of New York.

Dated: June 20, 2011

New York, NY.

Respectfully submitted,

__/s/ Hilary Korman_____
Hilary F. Korman
Mel S. Harris & Associates, LLC
Attorneys for Defendant
5 Hanover Square, 8th Fl.
New York, NY. 10004
Direct Dial: (212) 571-4900 Ext. 3309
Direct Facsimile: (212) 660-1018
E-mail: hkorman@melharrislaw.com